IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| G.E.H., : | |
|       Plaintiff, : | |
| VS. : | **1:21-CV-55 (TQL)** |
| Commissioner of Social Security, : | |
|       Defendant. : | |

**ORDER**

Plaintiff filed this Social Security appeal on April 6, 2021, challenging the Commissioner's final decision denying his disability application, finding him not disabled within the meaning of the Social Security Act and Regulations. (Doc. 1). Both parties consented to the United States Magistrate Judge conducting any and all proceedings herein, including but not limited to, ordering the entry of judgment. (Doc. 9; Clerk's Entry, April 7, 2021). The parties may appeal from the judgment, as permitted by law, directly to the United States Court of Appeals for the Eleventh Circuit. 28 U.S.C. § 636(c)(3). Jurisdiction arises under 42 U.S.C. §§ 405(g) and 1383(c). All administrative remedies have been exhausted.

*Legal Standard*

In reviewing the final decision of the Commissioner, the Court must evaluate whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards to the evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, which is defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Brito v. Comm'r, Soc. Sec.*

*Admin.*, 687 F. App'x 801, 803 (11th Cir. 2017) (per curiam) (first citing *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) (per curiam); and then quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991) (citations omitted).

"Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). "In contrast, the [Commissioner's] conclusions of law are not presumed valid. The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-46 (citations omitted).

Under the Regulations, the Commissioner evaluates a disability claim by means of a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant suffers from a severe impairment which significantly limits his or her ability to carry out basic work activities. Third, the Commissioner evaluates whether the claimant's impairments meet or equal listed impairments in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity (RFC) will allow a return to past relevant work. Finally, the Commissioner determines whether the claimant's RFC, age, education, and work experience allow for an adjustment to other work.

***Administrative Proceedings***

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on July 19, 2017, and also added a claim for Supplemental Security Income ("SSI") on April 10, 2019. (Tr. 10, 55,

268). In his applications, Plaintiff alleged an initial onset date of September 30, 2016. (Tr. 10, 55, 299). The Social Security Administration denied Plaintiff's claims initially and upon reconsideration.[1] (Tr. 10, 89, 96). Plaintiff requested a hearing (Tr. 102) and appeared before an Administrative Law Judge (ALJ) on September 26, 2019 (Tr. 10, 39).

In a hearing decision dated October 18, 2019, the ALJ determined Plaintiff was not disabled. (Tr. 10-26). The ALJ's decision became the final decision of the Commissioner upon the Appeals Council's denial of review. (Tr. 1-3).

***Statement of Facts and Evidence***

Plaintiff was born on August 9, 1966 (Tr. 24, 166), and was fifty (50) years old at the time of his alleged onset of disability (Tr. 24). The ALJ found that Plaintiff had past relevant work experience as a motor vehicle assembler, a paint making general laborer, a light fixture general laborer, and an industrial truck driver. *Id.*

The ALJ determined that Plaintiff suffered from the following severe impairments: obesity, spine disorders, osteoarthritis, diabetes mellitus, chronic obstructive pulmonary disease, and hypertension. (Tr. 13). The ALJ determined that Plaintiff suffered from non-severe medically determinable impairments of eczema and depression. (Tr. 13-14).

Considering the "paragraph B" criteria, the ALJ found that Plaintiff had no limitation in his ability to understand, remember, or apply information; a mild limitation in his ability to interact with others; no limitation in his ability to concentrate, persist, or maintain pace; and a mild limitation in his ability to adapt or manage himself. (Tr. 14-15). Because the ALJ found that Plaintiff's medically determinable mental impairments caused no more than "mild" limitations, the ALJ found that they were non-severe. (Tr. 15).

---

[1] Plaintiff's claim for SSI was added after Plaintiff's claim for DIB was denied on reconsideration. There is no notice of decision as to Plaintiff's claim for SSI in the record.

Considering the evidence relating to all of Plaintiff's impairments, individually and in combination, the ALJ found no evidence that the combined clinical findings from such impairments reached the level of severity contemplated in the listings. *Id.*

Considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work, except that he could frequently climb, balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to pulmonary irritants. (Tr. 17).

The ALJ determined that Plaintiff could not perform any past relevant work. (Tr. 24). Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 24-25).

Ultimately, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, at any time between September 30, 2016, the alleged onset date, through October 18, 2019, the date of the ALJ's decision. (Tr. 25-26).

## DISCUSSION

Plaintiff argues that the ALJ erred because she (1) failed to properly evaluate the medical opinion evidence, and (2) failed to properly evaluate Plaintiff's subjective complaints. Plaintiff also argues that the structure of the Social Security Administration is unconstitutional which renders the ALJ's decision void. (Doc. 14).

### *Medical Opinion Evidence*

The regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c. Under the prior regulations, medical evidence was given weight based on a "treating-physician rule," which created a discrete hierarchy based upon the classification to which medical evidence belonged. *See Himes v. Comm'r*

*of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) ("There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians.") (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)).

However, the Eleventh Circuit recently held in a published opinion that the amended Regulations validly abrogated its prior precedent for applying the treating-physician rule. *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022). Under the amended regulations that apply to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

While the new regulations eliminate the hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, an ALJ is still required to articulate how she considered the medical opinions and how persuasive she found them. *See Matos v. Comm'r of Soc. Sec.*, 2022 WL 97144 at *4 (11th Cir. 2022) (explaining the new regulations). An ALJ is required to explain how she considered the "supportability" and the "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). An ALJ may, but is not required to, articulate consideration of other factors related to that medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Matos*, 2022 WL 97144 at *4.

Plaintiff argues that the ALJ failed to properly articulate the "other factors," in addition to the persuasiveness and supportability factors. (Doc. 14, pp. 3-4). Plaintiff cites a portion of the Regulations which Plaintiff says requires the ALJ to articulate the other factors "in paragraphs (c)(3) through (c)(5)" of 20 C.F.R. § 404.1520c. *Id.*

5

The ALJ was required to articulate her considerations of the "supportability" and the "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Where medical opinions or prior administrative medical findings about the same issue are found by the ALJ to be equally persuasive, the ALJ "will articulate how [she] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)" for those specific medical opinions or prior administrative medical findings, but this additional articulation requirement is <u>only</u> triggered where (1) the ALJ finds two or more medical opinions or prior administrative medical findings equally persuasive (2) about <u>the same</u> issue, and (3) are <u>consistent</u> with the record, <u>but</u> (4) are <u>not exactly</u> the <u>same</u>. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). Here, Plaintiff appears to argue that the ALJ should have articulated the additional factors as to the opinions or findings of Dr. Williamson, Dr. Vance, and the State Agency administrative findings. (Doc. 14, pp. 3-6, 16).

However, the ALJ did not find either Dr. Williamson's opinion or Dr. Vance's opinion persuasive. (Tr. 21-23). Because the ALJ did not find their opinions persuasive, the ALJ was not required to articulate the additional factors regarding those two opinions. The ALJ also found that Dr. Williamson's opinion was inconsistent with his own examination findings, as well as being unsupported by the other treatment notes in the record. (Tr. 21-22). Accordingly, this is a second reason that the ALJ did not have to articulate the additional factors regarding Dr. Williamson's opinion. Finally, the Court notes that the ALJ <u>did</u> discuss an additional factor regarding Dr. Vance. Specifically, the ALJ noted the length of Dr. Vance's relationship with Plaintiff, which is an additional factor found in §§ 404.1520c(c)(3) and 416.920c(c)(3). (Tr. 22-23). Accordingly, the Court finds the ALJ properly articulated the required factors as to Dr. Williamson and Dr. Vance.

Plaintiff also appears to argue, in substance, that the evidence did not support the ALJ's findings regarding both physicians' opinions. (Doc. 14, pp. 6-17). In support thereof, Plaintiff cites other evidence in the record. *Id.*

However, the "issue before [the Court] is whether there was substantial evidence to support the [ALJ's] decision, not whether there could be substantial evidence in the record to support a different decision." *Rodriguez ex rel. R.C. v. Berryhill*, 2021 WL 5023951 at *7 (11th Cir. 2021) (citing *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1282 (11th Cir. 2004)). "Under a substantial evidence standard of review, [Plaintiff] must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)). As discussed, *infra*, the Court finds the ALJ's decision is supported by substantial evidence.

Lastly, Plaintiff relies on *Lewis v. Callahan*, 125 F.3d at 1440, for the proposition that vocational testimony premised on a defective RFC cannot, as a matter of law, be substantial evidence to support a denial of benefits. (Doc. 14, p. 3). However, *Lewis* did not involve a question of whether the vocational expert's testimony amounted to substantial evidence. Rather, the issue in *Lewis* was whether the ALJ properly accorded weight to several medical opinions. *Lewis*, 125 F.3d at 1440 ("We do not find the requisite 'good cause' in this record and are not convinced by the ALJ's rational for crediting the opinions of the consulting physicians over those of the treating physicians.").

To the extent that Plaintiff alleges that the Vocational Expert's testimony does not constitute substantial evidence, (Doc. 14, pp. 3, 7), in "order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of

7

the claimant's impairments." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (quoting *Wilson*, 284 F.3d at 1227). A review of the hypothetical the ALJ posed to the Vocational Expert shows that the hypothetical included all of Plaintiff's limitations in Plaintiff's assessed RFC.

*ALJ's Credibility Assessment*

Plaintiff argues that the ALJ's findings as to Plaintiff's subjective complaints regarding his pain and other symptoms were erroneous. (Doc. 14, pp. 17-18). Specifically, Plaintiff argues that the ALJ's failure to properly consider the opinion evidence is inextricably intertwined with the ALJ's failure to consider Plaintiff's subjective complaints. *Id.* Plaintiff also asserts that the ALJ should have considered Plaintiff's work history but did not do so. *Id.* at 18.

As found, *supra*, the ALJ's consideration of the opinion evidence was supported by substantial evidence. Further, statements about pain or other symptoms cannot alone establish that an individual is disabled. 20 C.F.R. §§ 404.1529(a), 416.929(a). In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). If a claimant testifies about his subjective complaints of disabling pain and other symptoms, and the ALJ chooses to discredit the claimant's complaints of pain, the ALJ "must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (first citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); and then citing *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 18). In making this finding, the ALJ limited Plaintiff to light work with additional limitations. (Tr. 23-24).

The ALJ addressed Plaintiff's claims regarding his back, knees, hands, COPD, and heart conditions. The ALJ found that the record showed some physical examination findings of tenderness to palpation in the lumbar spine and mildly restricted range of motion and a minimally positive result on a right leg raise test on a single occasion. (Tr. 19). The ALJ noted that Plaintiff's doctors had consistently diagnosed Plaintiff's low back pain as a lumbar strain, mild degenerative disc disease, or sacroiliac joint disease rather than more severe abnormalities. *Id.* Regarding Plaintiff's knees, the ALJ noted that Plaintiff's pain had decreased with treatment and that his mobility increased steadily, that his doctors recommended the use of a brace or a TENS unit earlier in his treatment but did not do so in later treatment, and that surgical interventions were not recommended. *Id.*

As to Plaintiff's COPD, the ALJ found that it was entirely controlled with daily use of routine inhalers with sporadic use of a rescue inhaler, that Plaintiff had never required emergency medical care or inpatient hospitalization for breathing problems, that he does not require the use of a portable oxygen tank, and that while Plaintiff reported that he frequently used his daughter's nebulizer, Plaintiff's doctors never found it medically necessary for Plaintiff to have his own nebulizer. *Id.* at 19-20.

Regarding Plaintiff's diabetes, the ALJ found it was controlled with routine daily medications with no notable side effects. *Id.* at 20. Regarding Plaintiff's heart conditions, the ALJ

9

noted that the record showed that Plaintiff had some follow up care for his hypertension, but that it was controlled with minor doses of routine medications without any notable side effects. *Id*. While a cardiac stress test found some reduced function, Plaintiff had not been hospitalized for any heart condition at any time, his doctors had not recommended permanent restrictions on his activity, and in fact, his doctors encouraged Plaintiff to be as active as possible. *Id.* Finally, the ALJ noted that Plaintiff no longer consistently took any medications for his heart conditions. *Id.*

The Court finds the ALJ properly applied the pain standard for several reasons. Most fundamentally, the ALJ did not find that Plaintiff was in no pain. Rather, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. (Tr. 18). The ALJ also did not completely reject Plaintiff's claims of pain related to his medically determinable impairments. Rather, the ALJ found that Plaintiff's claims related to his medically determinable impairments warranted limitations to his RFC, as discussed, *supra*. (Tr. 23-24). "Put differently, [the ALJ] discounted [Plaintiff's] subjective testimony regarding the extent of [his] symptoms" and their effect on his RFC, "but [she] did not find that [Plaintiff] was not in any pain" or have no symptoms at all. *Henderson v. Berryhill*, 2019 WL 1179426 at *4 (S.D. Ga. 2019).

Further, the ALJ articulated explicit and adequate reasons for discounting Plaintiff's subjective complaints of his allegedly disabling pain. *Hale*, 831 F.2d at 1011. Finally, the ALJ's credibility determination was sufficient for the Court to conclude that the ALJ considered Plaintiff's condition as a whole. *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014) (per curiam) (citing *Dyer v. Barnhard*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam)).

The ALJ's decision to discount Plaintiff's subjective testimony regarding the extent of his symptoms and their effect on his RFC is also supported by substantial evidence. On December 30, 2016, Plaintiff presented to the emergency room, stating that he fell onto his right hip at a store. (Tr. 335). Plaintiff's hip/pelvis exam was normal with tenderness, his knee exam was normal with full range of motion and knee extension was intact, his ankle exam was normal with full range of motion, his foot/toe exam was normal with full range of motion, his back exam was normal with full range of motion, and while his right leg raise was painful, his left leg raise was non-tender and normal. (Tr. 337). An x-ray found no definite evidence of acute fracture, but questioned the possibility of sacroiliac joint disease on the right and recommended further correlation with follow-up as clinically indicated. (Tr. 340).

On January 24, 2017, Plaintiff began injection treatment. (Tr. 563). During the initial examination, Plaintiff self-reported that his pain was 7 to 9 out of 10. *Id.* Plaintiff's musculoskeletal exam was largely normal, with some tenderness and unspecified decrease in range of motion. (Tr. 565). Plaintiff was given an injection in his right sacroiliac joint. (Tr. 566). Plaintiff was advised to use an anti-inflammatory if needed. *Id.* Thereafter, Plaintiff received a series of injections on a roughly weekly basis through May 25, 2017. (Tr. 504-560, in reverse chronological order).

Plaintiff continued treatment until June 5, 2017 (Tr. 498), and then again from October 18, 2017 through May 7, 2018 (Tr. 437-496, in reverse chronological order). At the beginning of Plaintiff's treatment, his self-reported pain level was generally 7 to 9 out of 10, and as treatment went on, it gradually decreased, until it was generally in the 2 to 5 range. (*See, e.g.*, Tr. 559 (rating pain 7 to 9); Tr. 530 (rating pain 4 to 5); Tr. 482 (rating pain 2 to 5); Tr. 437 (rating pain 3 to 5)).

Plaintiff's exams were generally consistent with his initial exam, with somewhat improved findings as treatment progressed. (*See, e.g.*, Tr. 560 (finding range of motion of lumbar spine was

not within normal limits); Tr. 484 (finding Plaintiff was experiencing low back pain, muscle spasm, motion restriction, but finding that Patient felt some what better in his thoracic region); Tr. 447 (same)). Notably, while Plaintiff's exams discussed some reduction in range of motion, no specific findings were discussed as to the level of reduction or what movements were still possible for Plaintiff.

From late June 2017 until November 2017, Plaintiff received another series of injections. (Tr. 371-381). After his injections, Plaintiff ambulated independently with no distress. (Tr. 375). On September 18, 2017, Plaintiff had no discomfort in his right hip with end range movements. (Tr. 378).

On July 30, 2019, Plaintiff was found to have typical angina and he was referred for heart catheterization. (Tr. 602). On August 7, 2019, Plaintiff had left heart catheterization. (Tr. 599). At discharge, no medication changes were made, and Plaintiff was to follow up in one month. *Id.*

In his consultative examination, Dr. Williamson opined as to the restrictions noted in Plaintiff's Brief. (Tr. 355). However, Dr. Williamson completed an all systems form as to Plaintiff, which found normal range of motion as to all evaluated systems except for reduced range of motion as to Plaintiff's right and left lateral rotation in his back. (Tr. 356-59). Plaintiff also had 5/5 grip and pinch strength and 5/5 strength in his upper and lower extremities. (Tr. 358).

In his treating source statement, Dr. Vance noted that he had only seen Plaintiff two times. (Tr. 616). On April 25, 2019, Dr. Vance did not assess Plaintiff's back. (Tr. 675). On May 31, 2019, Plaintiff did not mention any back or knee pain to Dr. Vance. (Tr. 670). Plaintiff received a zero score in his depression screening at both visits with Dr. Vance. (Tr. 671, 675).

While there is some evidence to support Plaintiff's allegations as to his medically determinable impairments, the issue before the Court is whether there was substantial evidence to

support the ALJ's decision, not whether there could be substantial evidence in the record to support a different decision. *Rodriguez ex rel. R.C.*, 2021 WL 5023951 at *7 (citing *Shinn ex rel. Shinn*, 391 F.3d at 1282). Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence.

Plaintiff also argues that the ALJ did not consider Plaintiff's work history. (Doc. 14, pp. 17-18). As an initial matter, the ALJ was not required to articulate any findings about Plaintiff's work history when considering Plaintiff's subjective complaints. *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (finding the ALJ properly considered the pain standard despite the claimant's claim that the ALJ should have accepted her testimony because she had a good work history). Further, the ALJ expressly stated that she considered the entire record and Plaintiff provides no evidence that the ALJ did not consider Plaintiff's work history. (*See* Tr. 17).

As to the evidence that the ALJ is required to specifically refer to, there is "no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision" as long as the ALJ's decision "is not a broad rejection which is 'not enough to enable'" the Court to conclude that the ALJ considered Plaintiff's medical condition "as a whole." *Dyer*, 395 F.3d at 1211 (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). Here, as discussed, *supra*, the Court finds that the ALJ considered Plaintiff's medical condition as a whole.

Having considered the ALJ's decision and all of the evidence in the record, the Court finds that the ALJ's decision is supported by substantial evidence.

***Constitutionality of the Structure of the Social Security Administration***

Plaintiff argues that the ALJ's decision is void because the Commissioner was allegedly unconstitutionally appointed. (Doc. 14, pp. 18-20). In support thereof, Plaintiff relies principally

upon *Seila Law, L.L.C. v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020). *Id.* at 19.

The Commissioner agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers doctrine to the extent that it is construed as limiting the President's authority to remove the Commissioner without cause. (Doc. 17, p. 9). However, the Commissioner argues that *Collins v. Yellen*, 141 S. Ct. 1761 (2021), holds that, even in the face of an unconstitutional statutory removal restriction, "a plaintiff seeking relief on that basis must show that the restriction actually caused him harm." *Id.* (citing *Collins*, 141 S. Ct. at 1787-89). The Commissioner also asserts that the ALJ who adjudicated Plaintiff's claim was appointed by an Acting Commissioner, and thus the Commissioner argues, the ALJ here did not suffer from the defect of having been appointed by a Commissioner who was subject to an unconstitutional removal restriction. *Id.*

Plaintiff's Reply focuses exclusively on the constitutional question. (Doc. 18). Plaintiff argues that it is irrelevant whether the ALJ in question was properly appointed because the improper appointment was of the Commissioner. *Id.* at 5. Plaintiff asserts that harm should be presumed from such an improper appointment. *Id.* 5-6.

As an initial matter, the Court notes that Plaintiff's contention in his Complaint is that "the denial of his disability claim is not supported by substantial evidence[.]" (Doc. 1, p. 2). Plaintiff's Complaint does not, therefore, make a facial constitutional challenge to § 902(a)(3). The Court also notes that Plaintiff does not challenge his hearing by alleging inadequate due process.

While Plaintiff argues that harm should be presumed, *Collins* stands for the opposite proposition. In *Collins*, the Supreme Court remanded the case for the lower courts to <u>determine</u> whether there was, in fact, a compensable harm. *Collins*, 141 S. Ct. at 1788-89. Therefore, harm is not presumed. As a result, the Court need not reach the question of whether § 902(a)(3) is

unconstitutional because, even assuming *arguendo* that it is, Plaintiff has not shown a compensable harm resulting from the allegedly unconstitutional provision.

Plaintiff makes no claim of harm stemming from the allegedly unconstitutional provision, except to the extent that Plaintiff was allegedly denied a valid administrative adjudicatory process from the ALJ and the Appeals Council. (Docs. 14, p. 19; 18, p. 4). However, as noted, Plaintiff did not raise an objection to the administrative adjudicatory process either at the ALJ level or the appeals level, nor did Plaintiff assert in his Complaint that he was harmed in any way by the allegedly unconstitutional provision.

Plaintiff conflates the alleged injury – the allegedly invalid administrative adjudicatory process – with the need to find a compensable harm that flows from the injury. *See Collins*, 141 S. Ct. at 1788-89 ("Although an unconstitutional provision is never really part of the body of governing law (because the Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment), it is still possible for an unconstitutional provision to inflict compensable harm . . . The parties' arguments [disagreeing as to compensable harm] should be resolved in the first instance by the lower courts.").

Further, Justice Kagan's concurrence in *Collins* is instructive: "Consider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year . . . given the majority's remedial analysis, I doubt the mass of SSA decisions . . . would need to be undone." *Id.* at 1802. If Plaintiff was correct that an allegedly unconstitutional administrative adjudicatory process was the only harm required to be shown, then "the mass of SSA decisions" would all need to be "undone." Plaintiff must show harm beyond an allegedly unconstitutional administrative adjudicatory process. Accordingly, the Court finds that Plaintiff has not shown a compensable harm.

Plaintiff cites no case in which courts have remanded claims for reconsideration based on the allegedly unconstitutional defect in § 902(a)(3). As of the date of this Order, only the Ninth Circuit appears to have decided this precise issue. *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022). In the Middle District of Georgia, District Judge Marc T. Treadwell found a similar argument "unavailing," that it did "not require remand," and resolved the claimant's claims without determining whether § 902(a)(3) was unconstitutional. *L.M. v. Comm'r of Soc. Sec.*, 2021 WL 8268034 at *3 (M.D. Ga. 2021). A survey of the case law reveals that every district court to confront this precise issue has found remand unnecessary. *Vickery v. Comm'r of Soc. Sec.*, 2022 WL 252464 at *4-5 (M.D. Fla. 2022) (collecting cases). Even those courts which have found § 902(a)(3) to be unconstitutional have found remand unnecessary. *See, e.g.*, *Kasey V. v. Comm'r of Soc. Sec.*, 2022 WL 102048 at *5-6 (W.D. Wash. 2022) (finding § 902(a)(3) unconstitutional but finding no connection between the unconstitutional provision and the ALJ's decision); *Nathanial H. v. Kijakazi*, 575 F. Supp. 3d 1305, 1311-13 (D. Ore. 2021) (finding § 902(a)(3) unconstitutional but finding, among other reasons, no compensable harm shown). Further, some courts have found claimants making similar constitutional challenges lacked standing to pursue such claims. *See, e.g.*, *Catherine J.S.W. v. Comm'r of Soc. Sec.*, 2021 WL 5276522 at *8 (W.D. Wash. 2021) (finding the claimant lacked standing because the claimant could not show a compensable harm).

To the extent that Plaintiff argues that former Commissioner Saul was improperly appointed as the basis for his constitutional claim, that argument also fails. First, *Seila Law* addressed an unconstitutional <u>removal</u> provision in the context of a single independent Director, not an allegedly unconstitutional <u>appointment</u>. *Seila Law*, 140 S. Ct. at 2192. Second, in *Collins*, the Supreme Court noted that properly appointed officers can be subject to unconstitutional

removal provisions and still assert proper authority. *Collins*, 141 S. Ct. at 1787 ("Although the statute unconstitutionally limited the President's authority to remove the confirmed Directors . . . there is no reason to regard any of the actions taken [by the Agency] as void."). Finally, there is no evidence in the record to support Plaintiff's assertion that former Commissioner Saul was "improperly appointed[.]" (Doc. 18, p. 5). Notably, before making that allegation, Plaintiff previously asserted that former Commissioner Sual was confirmed by the United States Senate and failed to argue that his appointment was improper in any matter. (Doc. 14, p. 18).

The Court notes that the relief Plaintiff seeks – remand for hearing by a different ALJ – would not cure the alleged constitutional defect. First, if as Plaintiff argues, the allegedly unconstitutional removal provision caused the ALJ's decision to be defective, then there is no ALJ who would not suffer from the same defect. It follows from Plaintiff's argument that all ALJs would have been appointed by Commissioners who were subject to the same allegedly unconstitutional removal provision because Congress has not amended the statute and the Supreme Court has not addressed it in the context of Social Security. Second, since every ALJ would thus be constitutionally defective, then any decision in which an ALJ found in favor of Plaintiff would likewise be constitutionally infirm.

Finally, even if remand could result in an allegedly constitutionally adequate result, the Court possesses no authority to remand with directions that another ALJ hear Plaintiff's claim. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) ("there is no provision in law for a court to remand 'to the ALJ' . . . When a court remands to the Commissioner, under section 405(g), the remanded case returns to the Appeals Council, which may, in its discretion, then remand the case to the administrative law judge.") (citing 20 C.F.R. § 404.983).

Accordingly, the Court finds that Plaintiff has not shown harm, and pursuant to *Collins*, remand is not necessary.

## CONCLUSION

As the Commissioner's decision that Plaintiff was not disabled is supported by substantial evidence, the Commissioner's decision is **AFFIRMED** pursuant to Sentence Four of § 405(g).

**SO ORDERED**, this 14th day of September, 2022.

                                                s/ ***THOMAS Q. LANGSTAFF***
                                                UNITED STATES MAGISTRATE JUDGE